The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between defendant-employer and plaintiff.
3. Plaintiff sustained an injury by accident on 3 October 1996 that is the subject of I.C. #669061.
4. Plaintiff sustained an injury by accident on 25 August 1997 that is the subject of I.C. #800142.
5. Plaintiff received a permanent partial impairment rating of 3% to each of her hands from Dr. K. Caulfield, M.D., on 21 November 1997, in the claim I.C. #669061.
6. Plaintiff was paid for her 3% permanent partial impairment ratings to her hands under a Form 21 Agreement approved by the Commission on 30 June 1998.
7. Plaintiff received a permanent partial impairment rating of 2% to her right thumb and 3% to her left thumb from Dr. K. Caulfield, M.D., in the claim I.C. #800142.
8. Plaintiff was paid for the 2% permanent partial impairment rating to her right thumb and the 3% permanent partial impairment rating to her left thumb under a Form 21 Agreement approved by the Commission on 3 February 1999.
9. Plaintiff's average weekly wage is $474.94, which results in a compensation rate of $316.64 per week.
10. Plaintiff was paid temporary total disability benefits from 30 October 1996 through 12 January 1997, and from 30 August 1999 through 20 October 1999 in claim I.C. #669061.
11. Plaintiff was paid temporary total disability benefits from 16 December 1997 through 2 February 1998 in claim I.C. #800142.
12. Plaintiff was paid temporary partial disability benefits from 1 February 1998 through 26 February 1998 in claim I.C. #800142.
13. Plaintiff was paid temporary partial disability benefits from 20 October 1999 through 3 November 1999 in claim I.C. #669061.
14. The depositions of Dr. Burrows, Dr. Caulfield and Dr. Covington are a part of the evidentiary record in this case.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff, a 49-year old high school graduate at the time of the hearing before the Deputy Commissioner, had worked for defendant-employer since October 1991. In May 1997, plaintiff first complained to Dr. Kathryn A. Caulfield, M.D., plaintiff's treating physician, of pain around her elbow. This pain was not related to the carpal tunnel releases which plaintiff had undergone previously. Dr. Caulfield injected plaintiff's left epicondyle in May 1997 and did a second injection in January 1998.
2. Plaintiff was released to return to work full duty effective 12 January 1998 after surgery in conjunction with her bilateral stenosing tenosynovitis of her thumbs. There were no permanent work restrictions as a result of this surgery.
3. In early 1999, defendant-employer's plant moved from Lowell, North Carolina, to Rock Hill, South Carolina. Plaintiff, who lives in Alexis, North Carolina, had to drive 45 minutes to get to work at the South Carolina site compared to 15-20 minutes to get to work at the North Carolina site.
4. Plaintiff first sought medical treatment for an alleged elbow injury on 19 March 1999 when she returned to Dr. Caulfield and complained of elbow pain, right greater than the left. Dr. Caulfield diagnosed plaintiff's condition as bilateral lateral epicondylitis but determined it was not related to either her previous carpal tunnel problems or to her thumb problems.
5. Lateral epicondylitis is an irritation of the lateral epicondyle, which is the outside bone of the humerus, or the long bone of the human arm. It can be aggravated by repetitive extension of the wrist and fingers. Most of the time this condition can be treated with injections.
6. Dr. James Forrester, plaintiff's family physician, who plaintiff visited on her own, removed plaintiff from work beginning 12 March 1999. Thereafter, on 23 March 1999, Dr. Caulfield released plaintiff to return to work and avoid repetitive wrist extension.
7. Plaintiff returned to Dr. Caulfield on 31 March 1999 after plaintiff called Dr. Caufield's office and complained of continuing problems with her arms and stated that she had difficulty working. Plaintiff indicated that neither the use of anti-inflammatory nor narcotic pain medication had been successful. Plaintiff complained of stinging pain in both of her hands with burning up into her left shoulder and going down into her ring and little fingers. Plaintiff had not complained of this symptom during her previous visit on 19 March 1999. Plaintiff also first complained that her fingers were going numb and that she was having difficulty holding objects and was dropping things. Furthermore, plaintiff indicated that she was having difficulty sleeping. Plaintiff was tearful and felt that there was no way that she could continue working.
8. Dr. Caulfield scheduled a repeat nerve conduction study on 27 April 1999 with Chris Covington, D.O. that showed no evidence of any recurrence of carpal tunnel syndrome. The study was essentially unremarkable with no evidence of recurrent neuropathy at the wrist and no enervation potentials were shown by the study.
9. Plaintiff had been working in an inspection job position which allowed her to work at her own pace and had not performed any assembly work since early 1998, following her release to return to work after thumb surgery.
10. However, plaintiff was under no work restrictions since her original surgery for carpal tunnel syndrome. Moreover, plaintiff was not under any permanent work restrictions after her thumb releases.
11. Defendant-carrier arranged for plaintiff's treatment to be transferred from Dr. Caulfield to Dr. Warren B. Burrows, II, M.D., a hand specialist, since plaintiff continued to complain after being treated by Dr. Caulfield for both previous workers' compensation claims involving her hands.
12. Accordingly, plaintiff was seen by Dr. Burrows on 29 September 1999 and presented with complaints of pain from her wrist to her arm, to her elbow, to her shoulder. Plaintiff appeared anxious and her physical examination was difficult for Dr. Burrows to evaluate. For example, plaintiff's complaints of pain and numbness were inconsistent. Plaintiff's complaints of numbness upon testing did not correlate to any anatomical structures or pattern of nerve distribution. Dr. Burrows experienced extreme difficulty trying to determine whether any of plaintiff's symptoms were related to her previous condition or her employment and felt that none of the complaints were related to plaintiff's work activities. Dr. Burrows further indicated that there appeared to be a hysterical response or a psychosomatic response to plaintiff's generalized arm pain.
13. At a subsequent visit on 6 October 1999, Dr. Burrows explained to plaintiff that he felt he was dealing a psychosomatic/myofascial pain condition that was not permanent. Furthermore, Dr. Burrows did not feel that medication or surgery would be successful in alleviating plaintiff's complaints. Dr. Burrows released plaintiff to return to work following her 19 October 1999 appointment with Dr. Covington. Returning to work would be beneficial for plaintiff and would be a part of her adjustment program according to Dr. Burrows. Plaintiff was to return to work in the inspection position gradually, starting with four hours per day for two weeks, then increase hours by two hours per day for two weeks until she had reached eight hours.
14. On 24 November 1999, plaintiff returned to Dr. Burrows complaining of pain at the level of the elbow, shoulder, and neck at which time plaintiff was released to return to work full time at her inspecting job. Dr. Burrows did not feel any further impairment rating was necessary. Despite Dr. Burrows release, plaintiff did not return to work in November 1999.
15. Plaintiff worked a total of nine weeks between March and December 1999 and did not work at all during the months of April, June, July, September, November and December 1999. Plaintiff did not return to work for defendant-employer after her November 1999 full release by Dr. Burrows.
16. Dr. Burrows visited defendant-employer's facilities and determined that there was no job that was highly hand intensive.
17. According to the greater weight of the medical evidence of record, plaintiff's complaints of elbow, shoulder and neck pain were not a result of her previous workers' compensation claims involving her wrist and her thumbs, nor were they a result of plaintiff's work activities.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove that she has sustained an injury by accident or an occupational disease arising out of and in the course and scope of her employment in conjunction with her complaints of elbow pain beginning in March 1999 or her lateral epicondylitis. N.C.G.S. §97-2(6); § 97-53.
2. Plaintiff's complaints of elbow, shoulder, and neck pain are not the result of any substantial change of condition concerning her previous workers' compensation claim for bilateral carpal tunnel syndrome, I.C. #669061. N.C.G.S. § 97-47.
3. Plaintiff's complaints of elbow, shoulder, and neck pain are not the result of any substantial change of condition concerning her previous workers' compensation claim for bilateral stenosing tenosynovitis of her thumbs, I.C. #800142. N.C.G.S. § 97-47.
4. Plaintiff is entitled to no further medical treatment resulting from her previous workers' compensation injuries from claims I.C. #669061 and I.C. #800142. N.C.G.S. § 97-25; § 97-25.1.
5. Plaintiff is not entitled to further disability benefits for any time missed from work during 1999, which has not previously been paid, or for any missed time thereafter. In addition, plaintiff is not entitled to further permanent partial disability benefits. N.C.G.S. § 97-2(6); § 97-29; § 97-31.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim for additional benefits under the Workers' Compensation Act is hereby, and the same shall be, DENIED.
2. Each side shall bear its own costs.
This the ___ day of August 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________ RENE C. RIGGSBEE COMMISSIONER